### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**KENNETH M. FALLON**                                        **CIVIL ACTION**

**VERSUS**                                                              **NO. 05-3082**

**JO ANNE B. BARNHART,**                              **SECTION "R" (3)**
**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION**

### <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Kenneth M. Fallon, seeks judicial review of the Commissioner's final decision, denying his claim for benefits under the Social Security Act.  42 U.S.C. § 405(g) *et seq*.   This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B). Plaintiff's appeal was submitted on memoranda and the Administrative Record of the proceedings before the Commissioner.

Considering the memoranda, administrative record, and the applicable law, for the reasons set forth in the captioned report below, the undersigned United States Magistrate Judge RECOMMENDS that the Commissioner's decision be AFFIRMED ON APPEAL and the plaintiff's complaint be DISMISSED WITH PREJUDICE.

## I. PROCEDURAL BACKGROUND

On March 28, 2003, the plaintiff, Kenneth M. Fallon ("Fallon"), filed an application for disability benefits, alleging disability due to chronic ischemic heart disease, hypothyroidism, rotator cuff tendonitis and chronic obstructive pulmonary disease.[1]   Plaintiff was forty-nine years old at the time of his application and fifty-one years old at the time of his administrative hearing.   Fallon  graduated from high school and has two years of college.  He worked as a mail carrier for the United States Postal Service until January of 2003.[2]

Pursuant to the December 14, 2004 hearing and considering all of the evidence of record, ALJ Dawson determined that Fallon was not disabled at any time through the date of decision .[3] The ALJ found that the claimant has atherosclerotic coronary artery disease, status post bypass graft surgery, left shoulder tendonitis, degenerative changes at L3-L4, degenerative changes of the left knee joint and mild to moderate chronic obstructive pulmonary disease, which are "severe" impairments within the meaning of the Regulations.[4]   The ALJ found no impairment or combination of impairments which met the severity requirements in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4.[5]

---

[1] *See* Leads Protective Filing Worksheet [Adm. Rec. 69]; Application for Disability Benefits dated March 28, 2003 [Adm. Rec. 70-72]; Adult Disability Report dated March 26, 2003 [Adm. Rec. 80-89].

[2] *See* Transcript dated December 14, 2004 [Adm. Rec. 303-304].

[3] *See* ALJ Mark R. Dawson's February 24, 2005 Decision [Adm. Rec. 17-23].

[4] *Id.* at 18, 22.

[5] *Id.*

The ALJ further determined that Fallon was unable to perform his past relevant work as a mail carrier, which requires a medium level of exertion; however, ALJ Dawson further determined that the plaintiff retained the residual functional capacity to perform a limited range of light work, to wit:

> The claimant retains the residual functional capacity to do work which is light in exertional capacity, to lift 20 pounds occasionally, and 10 pounds frequently; to sit without limitation; to stand and/or walk for a total of about 6 hours in an 8-hour workday; to balance, stoop, kneel, crouch or crawl frequently but should only occasionally climb stairs, ramps, ladders, ropes or scaffolds and should avoid extremes of heat or cold.[6]

Based upon the testimony of the Vocational Expert (VE) Kelly Roberts, the ALJ determined that there were a significant number of light level jobs in the State of Louisiana that Fallon was capable of performing, to wit: 8,200 cashier; 500 interviewer; 1,000 general office clerk; 273 administrative support; and 250 security guard jobs.[7]

Through his designated representative, Matt Greenbaum, plaintiff requested review of the Hearing Decision and Order arguing, *inter alia*, that plaintiff's sit/stand limitation significantly erodes the occupational base of work the plaintiff can perform even at the sedentary level. Thus, Medical Vocational Grid Rule 201.14 applies to Fallon, who is considered to be approaching advanced age, and directs a finding of disability in his case.[8] On review, the Appeals Council found no reason under the governing regulations to review the ALJ's decision and adopted it as

---

[6]*Id.* at 23.

[7]*Id.* at 22; Transcript of December 14, 2004 Hearing  [Adm. Rec. 316-317].

[8]*See* Request for Review of Hearing Decision/Order dated February 28, 2005 [Adm. Rec. 13].

the final decision of the Commissioner.[9]  The decision became final when the Appeals Council denied review and the matter is now ripe for judicial review.  On July 26, 2005, Fallon filed his complaint in the captioned matter pursuant to 42 U.S.C. § 405(g).  The parties agree that the issues are amenable to summary disposition.[10]

## II. APPLICABLE LAW

### A.  Standards of Review

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.[11]  If the Commissioner's findings are supported by substantial evidence they must be affirmed.[12]

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.[13]  It is more than a scintilla, but may be less than a preponderance.[14]

---

[9]*See* Notice of Appeals Council Action dated May 20, 2005 [Adm. Rec. 4-7].

[10]*See* Plaintiff's Motion for Summary Judgment [Fed. Rec. No. 24]; and Commissioner's Cross-Motion for Summary Judgment [Fed. Rec. No. 25].

[11]*See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Carriere v. Sullivan,* 944 F.2d 243, 245 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).

[12]*Martinez*, 64 F.3d at 173.

[13]*Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Spellman*, 1 F.3d at 360.

[14]*Id.*

A district court may not try the issues *de novo*, reweigh the evidence, or substitute its own judgment for that of the Commissioner.[15]   The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[16]   However, the district court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.[17]   Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive.[18]

### B. Entitlement to Disability Benefits under the Act

To be considered disabled and eligible for disability benefits under the Act, the plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[19] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[20]   The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful

---

[15]*Ripley*, 67 F.3d at 555; *Spellman,* 1 F.3d at 360; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

[16]*See Arkansas v. Oklahoma*, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992).

[17]*Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

[18]*Ripley,* 67 F.3d at 555.

[19]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[20]20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 (1995).

activity.[21]

The five-step procedure for making a disability determination under the Social Security

Act was cogently restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001):

> The Social Security Act defines "disability" as the "inability to engage in any
> substantial gainful activity by reason of any medically determinable physical or
> mental impairment which can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not less than 12 months." To
> determine whether a claimant is disabled, and thus entitled to disability benefits, a
> five-step analysis is employed. First, the claimant must not be presently working
> at any substantial gainful activity. Second. the claimant must have an impairment
> or combination of impairments that are severe. An impairment or combination of
> impairments is "severe" if it "significantly limits [a claimant's] physical or mental
> ability to do basic work activities." Third, the claimant's impairment must meet or
> equal an impairment listed in the appendix to the regulations. Fourth, the
> impairment must prevent the claimant from returning to his past relevant work.
> Fifth, the impairment must prevent the claimant doing any relevant work,
> considering the claimant's residual functional capacity, age, education, and past
> work experience. At steps one through four, the burden of proof rests upon the
> claimant to show he is disabled. If the claimant acquits this responsibility, at step
> five the burden shifts to the Commissioner to show that there is other gainful
> employment the claimant is capable of performing in spite of his existing
> impairments. If the Commissioner meets this burden, the claimant must then
> prove he in fact cannot perform the alternate work.[22]

The four elements of proof weighed in determining whether evidence of disability is

substantial are: (1) objective medical facts;(2) diagnoses and opinions of treating and examining

physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age,

education, and work history.[23]   "The Commissioner, rather than the courts, must resolve conflicts

---

[21]*Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990).

[22]*Shave*, 238 F.3d at 594 (*quoting Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)).

[23]*Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir. 1995).

in the evidence."[24]

## C. Medical Opinions of a Treating Source

The ALJ must follow the Guidelines set forth in 96-2p to determine whether "controlling weight" should be given medical opinions of a "treating source."  These guidelines are that: (1) the opinion must come from a "treating source;" (2) the opinion must be a "medical opinion;" (3) the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be inconsistent with other substantial evidence.  Even if the ALJ finds that the treating source's medical opinion is not entitled to controlling weight, that does not mean that the opinion can be rejected.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."  (SSR 92-2p)

The factors provided in 20 C.F.R. 404.1527 and 416.927 include: (1) Examining relationship; (2) Treatment relationship, length of treatment, frequency of examination, nature and extent of relationship; (3) Supportability; (4) Consistency; and (5) Specialization.[25]  Suffice it to say, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."[26]

_____

[24]*Id.*

[25]Medical opinions of a specialist are generally accorded more weight than opinions of a source not a specialist. *Moore* v. *Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990). However, specialization is only one of several factors considered in the evaluation of medical opinions.

[26]*Shave v. Apfel,* 238 F.3d 592, 595 (5th Cir. 2001)(finding the ALJ's limited rejection of opinions and medical records provided by treating physician justified by the character of records

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status."[27]  No special significance is accorded to the source of an opinion on issues reserved to the Commissioner, such as whether impairments meet or equal the requirements for impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is known as the Listing of Impairments.  Where there is conflicting evidence regarding an issue reserved for the Commissioner, he has the responsibility to resolve that conflict.  The final decision on whether a claimant is disabled for purposes of the Act is a legal one rather than a medical one, and that determination may be made only by the Commissioner.[28]

In summary, the Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion.[29]

### III. ASSIGNMENTS OF ERROR

Essentially, the plaintiff claims that the ALJ erred in failing to fully credit the testimony regarding disabling symptoms.  In this regard, plaintiff contends that a different conclusion regarding his residual functional capacity would have been reached had the ALJ  consulted a

provided  and supported by medical evidence from other treating an reviewing physicians).

[27]*Moore v. Sullivan,* 919 F.2d at 905.

[28]*See Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989); *Moore,* 919 F.2d at 905.

[29]*See Greenspan*, 38 F.3d at 237(holding that the Act empowers the Commissioner to analyze the physicians' testimony and when substantial evidence supports the ALJ's decision to disregard a physician's conclusions, that basis alone is enough to survive judicial review); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman,* 1 F.3d at 364; *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

medical expert at the hearing and considered the side-effects of his medications and other

evidence corroborative of plaintiff's testimony, including plaintiff's cardiac rehabilitation reports,

consistent treatment by Drs. Poche and Rushing and plaintiff's sustained work history.

The Commissioner highlights that the plaintiff essentially raises one issue, *i.e.*, whether

the ALJ's credibility assessment was proper.  The Commissioner notes that credibility

assessments are peculiarly the province of the ALJ.  Defendant further contends that the ALJ's

discussion of the evidence comports with SSR 96-7p and that Dr. Rushing's and Dr. Pethke's

conclusory disability determinations were appropriately discounted as being improperly based

upon the plaintiff's subjective allegations and inconsistent with said treating physicians' objective

clinical findings and the results of diagnostic tests.[30]   Defendant reminds the Court that the

determination of disability is reserved to the Commissioner.

Defendant notes that the ALJ discussed results of the consultative examination performed

Dr. John Nitsche, which supports the ALJ's determination of no disability.  Dr. Nitsche's

examination revealed no pulmonary, cardiac or circulatory problems and a completely normal

neurological findings including normal muscle strength/tone/movements, no atrophy, normal

sensation and reflexes, no spasm, no swelling, no redness and no tenderness.  Moreover, he

observed that plaintiff's sitting and standing were normal and that he exhibited a normal gait.

Defendant notes that there is no evidence that the plaintiff complained to medical providers

---

[30]*See* Dr. Sylvia Rushing's Conclusory Form Medical Assessment dated October 10, 2003 (left blank in large part and concluding that claimant is "disabled" based upon recurrent angina without citation to medical tests or treatment records supporting any such conclusion) [Adm. Rec. 214-216]; Dr. Scott Pethke's Report dated May 22, 2003 (basing his opinion that claimant should be considered a candidate for "disability" upon claimant's report of dyspnea with mild exertion together with the diagnoses of moderate chronic obstructive pulmonary disease and coronary artery disease) [Adm. Rec. 195].

regarding any debilitating side-effects of his medications.  Finally, the Commissioner explains that the ALJ's statements at the time of the hearing highlighting the inconsistencies between the medical evidence and plaintiff's testimony is not an indication that medical expert testimony was necessary as the determination of credibility is peculiarly the province of the ALJ.  In summary, the Commissioner contends that the decision is supported by substantial evidence.

## IV.  ANALYSIS

### A. Failure to Consult a Medical Expert, inter alia, in connection with the ALJ's Credibility Assessment.

The case law teaches that reversals based upon a failure to develop the record require a showing of prejudice.[31]   At the outset, the Court observes that this case is nothing like the inadequate inquiry line of cases, typified by *Kane v. Heckler,* 731 F.2d 1216 (5th Cir. 1984), wherein the ALJ conducted a five-minute hearing transcribed in four pages and asked a single question of the *pro se* claimant.  In the case at bar, ALJ Dawson thoroughly questioned Fallon and posed questions to the VE on plaintiff's behalf, fulfilling  inquisitorial function.  Additionally, plaintiff's counsel posed questions to the VE and presented argument on plaintiff's behalf.[32]   The ALJ addressed Fallon's physical conditions, symptoms, medications, educational background, work experience, responsibilities, daily activities and  how plaintiff's symptoms affected his ability to function in daily life.[33]

The ALJ's questioning on all of the aforesaid topics, together with the Administrative

---

[31] *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir. 1984).

[32] *See* Transcript of the December 14, 2004 Administrative Hearing before ALJ Dawson [Adm. Rec. 317-319].

[33] *See id.*  [Adm. Rec. 302-316].

Case 2:05-cv-03082-SSV   Document 26   Filed 12/20/06   Page 11 of 21


Record as it is presently constituted, which includes functional capacity assessments, consultative evaluations and all of the plaintiff's medical records is sufficient to satisfy the duty imposed by *Kane, supra.*[34]  ALJ Dawson fulfilled his duty to develop the relevant facts and to augment the plaintiff's medical records so that he could fully and fairly evaluate Fallon's claim for disability insurance benefits.[35]

The applicable regulations do not require the ALJ to elicit "medical expert" testimony at the time of the hearing; instead, the regulations provide that the ALJ *may also* ask for and consider opinions from medical experts.[36]  The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the plaintiff.  In this case, the ALJ made and supported his credibility determination based upon residual functional capacity assessments and various clinical reports and tests of plaintiff's treating specialists indicating negative results.[37]

---

[34] *See Brock v. Chater,* 84 F.3d 726, 728 (5th Cir. 1996); *Carrier v. Sullivan,* 944 F.2d 243, 245 (5th Cir. 1991); *James v. Bowen,* 793 F.2d 702, 704-05 (5th Cir. 1986) (distinguishing *Kane v. Heckler*, 732 F.2d 1216 (5th Cir. 1984)).

[35] *See* Transcript of the Administrative Proceedings conducted on December 14, 2004 (noting that additional materials marked Exhibit 16(f) had been reviewed and admitting said additional medical evidence without objection) [Adm. Rec. 302].

[36] *See* 20 C.F.R. § 404.1527(f)(2)(iii)(2006).

[37] *See* ALJ Dawson's Decision dated February 24, 2005 [Adm. Rec. 19-20]; Functional Capacity Assessment (finding plaintiff capable of light exertional duties with certain working environment restrictions and only occasional climbing)[Adm. Rec. 159-164]; Dr. Nitsche's July 3, 2003 Report (noting that heavy work may be difficult but otherwise finding regular heart rate and rhythm, normal heart size, normal chest/lungs, clear lung fields with normal contours, completely normal neurological findings, normal lumbar/cervical range of motion, full range of motion in all peripheral joints, normal grip strength and normal fingering bilaterally) [ Adm. Rec.198-200]; Dr. C. Roca's Assessment dated November 2, 2002 (noting light duty, normal findings, painless full range of motion, normal gait, normal muscle tone, good functional strength, no atrophy and that most of Fallon's complaints are subjective) [Adm. Rec. 110-111]; Dr. Sylvia Rushing's December

The ALJ's assessment of the claimant's credibility is accorded great deference.[38]  The record lacks medical findings that corroborate nonexertional or exertional limitations which significantly affect the claimant's residual functional capacity to perform the jobs identified by VE Roberts.  An ALJ has the discretion to evaluate credibility and to arrive at an independent judgment regarding pain as well as the duty to ultimately determine disability on the basis of the claimant's residual functional capacity to engage in gainful employment.

It is apparent to the Court that the ALJ did consider the claimed limitations and determined in light of the medical evidence and the plaintiff's activities, that the limitations were only slight and had a minimal effect on plaintiff's ability to work.[39]  The ALJ explained that the medical treatment record considered together with the plaintiff's own testimony does not support his complaints of debilitating symptomotology, to wit:

> To determine whether the claimant's severe impairment is disabling, it is therefore necessary to evaluate the claimant's residual functional capacity to perform basic

16, 2002 Cardiolite Stress Test Results (noting good exercise tolerance, only one subtle episode of chest discomfort, however, otherwise normally active) [Adm. Rec. 135];  Cardio-Pulmonary Rehabilitation Record dated May 16, 2003 (noting regular sinus rhythm and cardio remained within normal limits) [Adm. Rec. 167]; Negative Myocardial Perfusion Scan dated January 5, 2004 (finding homogeneous perfusion, no focal abnormalities, overall left ventricular ejection fraction within the normal range and no regional wall motion abnormality) [Adm. Rec. 274];  Chest Exam dated November 11, 2004 (finding "no evidence to suggest acute cardio pulmonary process in this patient") [Adm. Rec. 296]; Southshore Lung Center Outpatient Records dated July 10, 2003 (noting "doing well" and "no apparent distress") [Adm. Rec. 203]; Southshore Lung Center Outpatient Records dated June 15, 2004 (noting "some sinus congestion," no apparent distress as to general appearance and, as to respiratory "fair air exchange" and "clear") [Adm. Rec. 245];  Lumbar MRI Findings dated January 28, 2004 (noting some disc dehydration at L3 through S1, but otherwise well hydrated, small bulges with minimal indentation and evidence of some degree of spinal stenosis but no disc herniation, disc protrusion or other deep bulges were demonstrated) [Adm. Rec. 240]

[38]See Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002) (stating that the ALJ has the responsibility to resolve questions of credibility).

[39]See ALJ Dawson's Decision dated February 24, 2005 [Adm. Rec. 20-22].

work-related activities.  Medical as well as non-medical evidence is relevant to the inquiry.  The claimant's credibility is required to be assessed, along with symptoms including pain, therapies, medications and their side effects.

In 2001, the claimant had a serious heart blockage revealed by a stress test, necessitating emergency surgery.  He obtained appropriate medical care followed up with proper cardiopulmonary rehabilitative treatment.  Post-surgical tests demonstrate that he has some artherosclerosis but that it is moderate at the most and does not obstruct the blood flow.  His lungs are clear, chest xrays were normal but required a CT scan follow up to clarify retrosternal ambiguity.  The CT proved normal.  Stress tests showed good exercise tolerance despite reported dyspnea in 2002-03; on a test conducted in January 2004, he achieved a METS level of 10.10.  Exhibit 15F/20.  There are disparate reports of the claimant's activities and symptoms, some relating that the had exertional dyspnea and chest pain, and was unable to walk more than two blocks, stand for a half-hour, or do even light gardening without symptoms.  On the other hand, Dr. Rushing reported prior to the stress test in 2003 that the claimant had only one instance of subtle chest pain since the 2001 surgery.

I find the claimant's assertions are partially credible.  His statements regarding his residual functional capacities are inconsistent with what the medical evidence shows he can do.  He asserts that he cannot do house repairs or yard work and that he can walk only a couple of blocks.  However, this asserted limitation is inconsistent with abilities that he has shown on stress tests and in rehabilitation exercises, precluding reliance on the statements and necessitating reference to the medical evidence for determination of functional abilities and deficits.  The tests have consistently shown that, although the claimant has some residual symptoms, he retains a normal range of exercise tolerance.  In addition, although he has some limitations in range of motion, and is no longer able to do heavy work, he still has normal strength and a significant range of motion.  I find that the claimant has the residual functional capacity to do a limited range of light work.  This finding is generally consistent with the findings of Dr. Roca, the claimant's treating physician writing in 2002, Dr. Nitsche, the consultative physician who performed a physical examination in July of 2003, and Dr. Scarpino, who reviewed the medical evidence available through May 2003.  Although the claimant's cardiologist urged that the the claimant be "considered for total disability" and the pulmonologist recommended he be "considered for disability," both based those opinions on the claimant's reported symptoms of dyspnea and chest pain, and the claimant's diagnosis, not on the basis of a functional assessment that they conducted and reviewed.  Where, as here, the claimant's medically determinable impairments do not meet the listing criteria, the residual functional capacity determines whether the individual is disabled.  Moreover, reported symptoms on which the treating physicians' recommendations were based are not consistent with all of the medical evidence available, particularly the recent medical evidence.  That evidence shows

13

that the claimant in this case retains significant ability.[40]

Essentially, plaintiff contends that the ALJ failed to specifically address *all* of the evidence and give sufficient detail regarding the credibility determination.   As previously mentioned, the issue at this level of review is whether substantial evidence supports the ALJ's rejection of plaintiff's subjective complaints of *disabling* symptoms in light of the objective medical evidence, *inter alia*.

ALJ Dawson acknowledged the plaintiff's subjective complaints and gave them some weight in making the determination, but found that Fallon was not precluded from performing all work activities.  The plaintiff testified at the hearing that his medications make him too dizzy, tired and sick to function.  However, plaintiff's testimony regarding the dire side effects of his medications are not corroborated by the clinical reports of his treating physicians.  More to the point, Fallon's medical records do not contain objective findings reflective of any condition characterized by disabling pain or fatigue.  Moreover, treatment records and results/findings based upon medical tests, clinical evaluations and functional assessments cited by the ALJ directly contradict plaintiff's hearing testimony.[41]

The ALJ may not have discussed *all of the evidence* in the record to the extent desired by the plaintiff, but the ALJ is only required to make clear the basis of his determination and need not discuss all of the supporting evidence and all of evidence rejected.[42]   In *James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426 (5th Cir.2000), the Fifth Circuit noted that it has

---

[40]*Id.,* at 20-21.

[41]*See* Note 37, *supra*.

[42]*See  James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 430 (5th Cir.2000).

refused to adopt the rule followed by the Third Circuit  "that an ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected."[43]

Credibility determinations and any conflicts in the evidence are properly resolved by the ALJ.[44]  This Court finds that there is substantial evidence to support the ALJ's conclusion that Fallon's allegations of "disabling" symptomotology were not substantiated by corroborative positive clinical findings and medical evidence.  Considering the fully developed record as a whole and taking into account all of the isolated bits of evidence which may fairly be said to detract from a finding of no disability, the substantial weight of evidence supports the Commissioner's ultimate determination in this case.

### B. Whether Medical-Vocational Grid Rule 201.14 Directs a Finding of Disability in this Case.

In addition to the points of error briefed in his motion for summary judgment, the plaintiff incorporated by reference the arguments set forth in plaintiff's March 7, 2005 letter to the Appeals Counsel arguing "grid error."[45]  Therein, plaintiff argued that the appropriate Medical-Vocational Grid Rule to be applied in his case is 201.14, which allegedly directs a finding of disability in his case.

In cases in which a claimant's residual functional capacity or vocational factors ( *i.e.*, age, education, work experience) do not precisely match a particular Grid Rule's criteria, the

---

[43]*See  id.,* 219 F.3d at 430 (*citing Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) and discussing *Cotter v. Harris,* 642 F.2d 700, 705 (3rd Cir. 1981)).

[44]*See Masterson,* 309 F.3d at 272; *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999).

[45]*See* Letter Brief to Appeals Council dated March 7, 2005 [Adm. Rec. 8-11].

Guidelines are not dispositive.[46]   Instead, the Guidelines "are used, in conjunction with the definitions and discussions in the text of the regulations, as guidance for decisionmaking" in such instances.[47]

The Guidelines never direct a conclusion of "disabled" or "not disabled" when a claimant has significant nonexertional limitations.[48]   When nonexertional limitations[49] are involved, "[t]he determination as to whether disability exists will be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in appendix 2."[50]   If the circumstances of a claimant's case "correspond to (or closely approximate) the factors of a particular rule, the adjudicator then has a frame of reference for considering the jobs or types of work precluded by other, nonexertional impairments in terms of numbers of jobs remaining for a particular individual."[51]   In instances in which the Guidelines merely serve as a decisional framework ( e.g., when significant nonexertional limitations are involved), the ALJ

---

[46]20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(b), (d).

[47]SSR 83-10 at *1.

[48]20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(1); 20 C.F.R. § 404.1569a(c)(2).

[49]"Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."  Social Security Ruling 96-9p, reprinted in West's Social Security Reporting Service Rulings 1983-1991 (Supp.2004) ("SSR 96-9p"), at 156.   "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional."  *Id.*   "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, reaching, handling, fingering, and feeling."  *Id.*

[50]20 C.F.R. § 404.1569a(c)(2); accord 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(1).

[51]20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d) (emphasis added).

16

may not simply take administrative notice of jobs existing in the economy and must, therefore, satisfy his burden of proof in some other fashion, most typically *via* the testimony of a vocational expert.[52]

Plaintiff's argument that Grid Rule 201.14 is dispositive and directs a finding of disability in this case[53] is without merit.  Section 201.14 dictates a finding of disability for a person who: (1) is *limited to <u>sedentary</u> work*, (2) is closely approaching retirement age, (3) has a education level of high school graduate or more, but with no provision for direct entry into skilled work, and (4) had past relevant work of a skilled or semi-skilled nature, but those skills are non-transferable.[54]

In this case, the ALJ concurred with substantial medical evidence that the plaintiff could do work which was light in exertional capacity; however, he could climb stairs, ramps, ladders and/or scaffolds only occasionally and he was further restricted from jobs that necessitate concentrated exposure to extremes of heat and/or cold.[55]  These restrictions constitute non-

---

[52]*See Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir.2000) (finding no error in ALJ's use of Grid Rules for guidance because ALJ consulted a vocational expert for further evidence); *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000) ("If, however, the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy."); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir.1987) (holding that, when the Grids are not dispositive, an "ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist."); *Lawler v. Heckler*, 761 F.2d 195, 197-98 (5th Cir.1985) (per curiam) (holding that "expert vocational testimony" should have been introduced because the facts found did not precisely align with the Grids).

[53]*See* Letter Brief to Appeals Council dated March 7, 2005 (arguing that had the ALJ found that plaintiff's residual functional capacity was limited to "sedentary" work, Grid Rule 201.14 would have required the ALJ to conclude that plaintiff was disabled) [Adm. Rec. 8-11].

[54]20 C.F.R. Pt. 404 , Subpt. P, App. 2, § 201.14 (all emphasis added).

[55]*See* ALJ Dawson's Decision [Adm. Rec. 21].

exertional limitations.[56]   Therefore, as a matter of law, the ALJ could not exclusively rely on the Medical-Vocational Guidelines.

Relying on the vocational expert's testimony that Fallon's past relevant work as a mail carrier was classified as semi-skilled and medium exertional level work, which fails to meet the claimant's restrictions both in terms of exertional requirements and environmental restrictions, the ALJ concluded that the plaintiff could not return to his past relevant work.[57]   In this case, the ALJ was obligated to employ the Guidelines as no more than a mere framework in arriving at his decision.  This is precisely what the ALJ did.[58]

Grid Rule 202.14 is applicable when the claimant: (1) is 50-54 years old; (2) is at least a high-school graduate; (3) has a skilled work background which does not yield transferrable skills; and (4) has a residual functional capacity limited to "light" work. "Light" work involves lifting no more than 20 pounds with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category requires a good deal of walking or standing.  20 C.F.R. § 416.967(b).  Light work requires standing or walking, off and on, for a total of approximately 6 hours out of an eight-hour workday. SSR 83-10.

The ALJ considered Grid Rule 202.14 in conjunction with the testimony of the vocational

---

[56]20 C.F.R. § 404.1569a(c)(1)(vi).

[57]*Id.*

[58]*See* ALJ Dawson's Decision  ("Medical-Vocational Rule 202.14 is applicable to similarly situated individuals who can do a full range of light work, and directs a finding of 'not disabled.' However, the residual functional capacity set forth above describes only a limited range of light work, and thus allows the rule to be used only as a framework for decision.") [Adm.Rec. at 22].

expert.[59]  When circumstances preclude the taking of administrative notice of jobs available in the

economy, an ALJ may carry his burden of proof *via* the testimony of an expert at the fifth step of

the disability inquiry.

In this case, the ALJ also relied on the opinions of a state agency physician, treating

physicians' assessments and a consulting examiner in reaching his conclusion that plaintiff can

perform light work.   Under the regulations, state agency physicians are permitted to consider the

evidence in the case record and make findings of fact about the medical issues, including the

claimant's residual functional capacity.[60]   As with the record of an examining physician, the

Commissioner accords the opinions of state agency physicians weight consistent with the

objective medical evidence underlying their opinions.[61]

Here, the evidence in the record supports the ALJ's decision that plaintiff had the residual

functional capacity to perform the jobs indicated by the VE.  Nowhere in the record does any

physician advise plaintiff to cut back on his daily activities.  The Court recognizes that the record

contains conclusory suggestions of Drs. Plethke and Rushing that the plaintiff be considered as a

candidate for disability.  However, the ALJ more than adequately explained that these physicians'

clinical findings, test results and medical records support no such conclusion.  Indeed, the law is

that *conclusory* opinions on the ultimate issue of "disability," an issue reserved exclusively to the

Commissioner, may be entitled to little or no weight.

As discussed above, plaintiff's assertions that the ALJ improperly weighed his credibility

---

[59] *See* Transcript of Administrative hearing (testimony of vocational expert) [Adm. Rec. 315-318];  ALJ Dawson's Decision (discussing testimony of the vocational expert) [Adm. Rec. 22].

[60] *See* 20 C.F.R. § 416.927(f)(1).

[61] *See* 20 C.F .R. 416.927(a)-(e).

regarding his residual functional capacity are similarly without merit. It is well-settled that credibility determinations are in the province of the ALJ and that the courts are loathe to interfere with them.  The ALJ is not required to accept all subjective testimony at face value.  Because the ALJ had an opportunity to observe plaintiff's demeanor and to determine his credibility, his observations are entitled to great weight.

Here, plaintiff's testimony as to pain and fatigue was considered in the context of all of the evidence before the ALJ and it was determined that plaintiff's testimony was not entirely credible. The ALJ recognized that plaintiff's residual functional capacity was limited somewhat through his determination that plaintiff was capable of light, and not medium, work.   In making this determination, the ALJ considered plaintiff's examination and treatment reports, the clinical and laboratory findings, the effectiveness of plaintiff's treatment, the alleged side effects of plaintiff's medications and the opinions of various treating and examining physicians.[62]

## V. CONCLUSION

Plaintiff has failed to identify any prejudice, procedural irregularity, lack of substantial evidence, failure to comply with applicable rules or other reversible error.  Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is more than enough evidence to support the conclusion that plaintiff was not disabled as defined under the Social Security Act.  Substantial evidence supports the ALJ's decision that plaintiff is not disabled within the meaning of the Act.  Therefore,

**IT IS RECOMMENDED** that the Commissioner's decision be AFFIRMED and that the plaintiff's complaint be DISMISSED WITH PREJUDICE.

---

[62]*See* ALJ Dawson's Decision, at 18-21.

**OBJECTIONS**

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this  20th  day of December, 2006.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**